**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TERENCE J. SPARKMAN AND LEONARD SPARKMAN, *personal representatives of the estate of* ELIJAH SPARKMAN, JR., *deceased*, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| A.W. CHESTERTON COMPANY; FOSTER WHEELER ENERGY CORP.; GOULDS PUMPS, INC.; METROPOLITAN INSURANCE COMPANY; RESEARCH-COTTRELL, INC. *n/k/a* AWT AIR COMPANY, INC; RILEY POWER, INC.; UNIROYAL, INC., | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

No. 2:12-cv-02957-DCN

**ORDER**

This matter is before the court on defendant Foster Wheeler Energy Corp.'s ("Foster Wheeler") motion for summary judgment and motion to strike. For the reasons set forth below, the court grants both motions.

## I. BACKGROUND

From 1954 to 2000, decedent Elijah J. Sparkman ("Sparkman") was employed in various capacities at Westvaco Pulp and Paper Mill ("Westvaco") in North Charleston, South Carolina, including as a laborer, boiler operator, evaporator operator, and precipitator operator. Pls.' Resp. to Foster Wheeler's Mot. Summ. J. 1-2. Sparkman was diagnosed with mesothelioma and died of this disease on October 20, 2012. Id. at 2. Plaintiffs Terence J. Sparkman and Leonard Sparkman ("plaintiffs") allege Sparkman's mesothelioma resulted from a prolonged exposure to asbestos while employed at

1

Westvaco.  Id.  Relevant to these motions, plaintiffs allege that Sparkman was exposed to asbestos from Foster Wheeler's asbestos-containing boilers while employed at Westvaco.  Id. at 1.  Their expert in this matter, Dr. Richard Kradin, has opined to a reasonable degree of medical certainty that Sparkman's malignant mesothelioma was caused by cumulative exposure to asbestos from his work at Westvaco, including his work with and around asbestos-containing boilers.  Id. at 2.

Although Sparkman passed away before he could be deposed in this matter, his coworkers have provided testimony as to how his job duties at Westvaco allegedly exposed him to asbestos.  Id.  Taken in the light most favorable to the non-moving party, as required on a motion for summary judgment, their testimony presents the following evidence.

Richard Mizzell ("Mizzell") testified that while he was employed as a boiler operator at Westvaco from 1976 to 1977, he had occasion to work with Sparkman while Sparkman also worked as a boiler operator on boiler numbers 8 and 9.  Id. at 43:3-21.  As a boiler operator at Westvaco, Sparkman worked around the boilers and used a six-foot steel lance to unclog the boiler parts.  Mizzell Dep. 42:22-43:8.  Mizzell testified that, while working at Westvaco, "[w]e had some Foster Wheeler boilers," and believed Foster Wheeler might have manufactured boiler number 8 and certain valves on that boiler.  Id. at 44:4-14, 73:11-15.  Mizzell described it as a 1500 pound steam pressure boiler that was 50-feet long, 50-feet wide and six stories tall.  Id. at 73:24-74:21.  He testified its exterior was surrounded by metal lagging and recalled asbestos insulation behind the metal lagging.  Id. at 75:9-21, 77:1-11.  Mizzell was unsure whether the Foster Wheeler valves he associated with boiler number 8 were insulated with asbestos.  Id. at 73:3-19.  He

testified that Sparkman would have had to "close the main stop valve [on this boiler] because that was his job" and might have been exposed to asbestos then. Id. at 80:21-81:9.

Fred Kessler ("Fred") testified that for six weeks in 1979, he worked as a boiler assistant and boiler operator on boiler numbers 6 and 7 while Sparkman worked as a boiler operator on boiler numbers 8 and 9. Fred Dep. 81:6-23; 83:17-21. Fred thought that both boiler numbers 8 and 9 were manufactured by Combustion Engineering. Id. at 84:17-20. He recalled that boiler number 5, which he believed to be a Murray or Riley Stoker boiler, was full of asbestos. Id. at 45:4-12.

Lonnie Kessler ("Lonnie"), Fred's brother, performed insulation work at Westvaco from 1976 to 1988; he worked around Sparkman on a weekly basis during this time. Lonnie Dep. Id. at 65:25-66:19, 67:2-5. Lonnie testified that as an insulator, he insulated boilers with block and mud insulation. Id. at 36:2-11. Lonnie recalled that his insulation work on boiler numbers 5, 6, and 7 created dust from the asbestos which Sparkman would have breathed. Id. at 67:17-68:7. In addition, Lonnie testified that Sparkman was exposed to dust when Lonnie installed and removed insulation from pipes. Id. at 68:12-17. However, it appears Lonnie is referring to pipes that were attached to precipitators. Id. at 35:24-36:17.

The plaintiffs have provided an affidavit from Walter Newitts, a former Foster Wheeler employee, taken in an unrelated case.[1] Pls.' Resp. to Foster Wheeler's Mot. Strike 5. Newitt was employed at Foster Wheeler from approximately 1963 to 1972, and testified that Foster Wheeler required and specified asbestos-containing insulation for use

---

[1] This affidavit is at issue in Foster Wheeler's motion to strike. See Foster Wheeler's Mot. Strike.

with its boilers. Id. at Ex. A at ¶¶ 2, 8. He further testified that, "[m]ost often, as part of the sale of the boiler, insulation was sold and distributed by Foster Wheeler." Id. at ¶ 9.

On September 14, 2012, Sparkman filed a personal injury action in the Court of Common Pleas in Charleston County, alleging claims of breach of implied warranty, breach of post-sale duty to warn, false representation, negligence, recklessness, and strict liability in tort. Defendants then removed the action to this court on October 12, 2012, alleging jurisdiction based on diversity of citizenship. On April 23, 2013, following Sparkman's death, the plaintiffs filed an amended complaint as the legal beneficiaries of Sparkman's estate and added a claim for wrongful death. On September 8, 2014, Foster Wheeler filed a motion for summary judgment, to which plaintiffs responded on September 25, 2014. On October 1, 2014, Foster Wheeler filed a motion to strike. Plaintiffs filed a response on October 20, 2014. The motions have been fully briefed and are now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

This case is predicated on diversity jurisdiction and was removed to federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Ass'ns., P.A. v. Allstate Ins. Co., 599 U.S. 393, 417 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). Because the development of the disease was the last event necessary to give rise to a cause of action, and because the evidence indicates that this occurred in South Carolina, South Carolina substantive law applies. See Moosally v. W.W. Norton & Co., 594 S.E.2d 878, 888 (S.C. Ct. App. 2004) ("Until the exposure to asbestos resulted in injury or damage, [plaintiff's] tort cause of action did not accrue.").

### III.  DISCUSSION

#### A.     Law of Causation in Asbestos Cases

In order for a claim of workplace asbestos exposure to be actionable, the plaintiff must establish sufficient proximate cause between the injury and exposure to asbestos from a particular product. Henderson v. Allied Signal, Inc., 644 S.E.2d 724, 727 (S.C. 2007). The South Carolina Supreme Court has adopted the "frequency, regularity and proximity test" set forth by the Fourth Circuit in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986). Henderson, 644 S.E.2d at 727. Under the Lohrmann standard, "[t]o support a reasonable inference of substantial causation from circumstantial

5

evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann, 782 F.2d at 1162. Such circumstantial evidence may include testimony from witnesses who were in the same vicinity as the plaintiff and who can "identify the products causing the asbestos dust that all people in that area . . . inhaled." Roehling v. Nat.'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir. 1986). The mere presence of "static asbestos" does not equate to asbestos exposure. Henderson, 644 S.E.2d at 727.

Plaintiffs attempt to differentiate Lohrmann from the facts of this case and argue a more relaxed causation standard applies. Pls.' Resp. to Foster Wheeler's Mot. Summ. J. 9-10. Specifically, the plaintiff in Lohrmann suffered from asbestosis, whereas Sparkman contracted mesothelioma. Lohrmann, 782 F.2d at 1158; Pls.' Resp. to Foster Wheeler's Mot. Summ. J. 8. Plaintiffs emphasize that the Seventh Circuit has applied a lower standard for causation in mesothelioma cases because the disease "can develop after only minor exposures to asbestos fibers." Tragarz v. Keene Corp., 980 F.2d 411, 410 (7th Cir. 1992) (citing Wehmeier v. UNR Indus., Inc., 572 N.E.2d 320, 337 (Ill. App. Ct. 1991)).

South Carolina law controls, however, and in Henderson, the South Carolina Supreme Court expressly adopted the causation standard for exposure set forth in Lohrmann. Henderson, 644 S.E.2d at 727. Importantly, the plaintiff in Henderson "contracted mesothelioma and other asbestos-related illnesses." Id. at 725. Accordingly, the plaintiffs must follow established South Carolina precedent and satisfy the "frequency, regularity, and proximity test." See e.g., Fritz v. Bayer Cropscience, Inc.,

6

2011 WL 4828485, at *1 n.1 (E.D. Pa. Feb. 1, 2011) (noting "the Supreme Court of South Carolina explicitly adopted the 'frequency, regularity, and proximity test'" and consequently applying this causation test to mesothelioma case) (citing Henderson, 644 S.E.2d at 727); Blackmon v. Owens-Illinois, Inc., 2011 WL 4790631, at *1 n.1 (E.D. Pa. Jan. 28, 2011) (same finding)).

### D. Foster Wheeler's Motions

#### 1. Motion to Strike

In their response to Foster Wheeler's motion for summary judgment, plaintiffs included an affidavit from Walter Newitts, a former Foster Wheeler employee. Pls.' Resp. to Foster Wheeler's Mot. Summ. J. Ex. A. Plaintiffs assert that this affidavit, taken during unrelated litigation, evidences that "Foster Wheeler required and specified asbestos-containing insulation for use with its boilers during the time period relevant to this case." Pls.' Resp. to Foster Wheeler Mot. Summ. J. 5. Foster Wheeler argues that the court should strike Newitts' affidavit because, among other reasons, his statements are irrelevant. Foster Wheeler's Mot. Strike 6; Foster Wheeler's Reply 3.

The most compelling reason to exclude Newitts's affidavit is its lack of relevance. Fed. R. Civ. P. 401. It is difficult to know what insulation Foster Wheeler specified for boilers at Westvaco without knowing the contents of its contract with Westvaco. As the testimony of James Egan ("Egan") attached to plaintiffs' response indicates, whether Foster Wheeler supplied or specified the insulation for its boilers depended on the individual contract. Egan Dep. 17:9-19. Newitts's affidavit does not mention any specific contracts Foster Wheeler had with Westvaco. In fact, the affidavit provides no indication Newitt ever went to Westvaco or knew of any Foster Wheeler boiler

7

specifically at Westvaco. Furthermore, because it is unknown when the Foster Wheeler boiler at issue was sold to Westvaco, it would be conjecture to infer that the insulation practices of Foster Wheeler indicated in Newitts's affidavit were in place when the boiler was sold. Therefore, the affidavit is not relevant to the determination of the facts of this case.

Accordingly, the court grants Foster Wheeler's motion to strike.

### 2.     Motion for Summary Judgment

Foster Wheeler argues that summary judgment is proper because there is no evidence that Sparkman was exposed to an asbestos-containing product placed into the stream of commerce by Foster Wheeler. Foster Wheeler Mot. Summ. J. 1. Foster Wheeler denies that it supplied a boiler to Westvaco, although its discovery response indicates that it supplied a "steam generating unit," among other equipment, to West Virginia Pulp & Paper Company, Charleston, South Carolina. Id. at 2, Ex. A at 4. Plaintiffs contend this is the same site as Westvaco. Pls.' Resp. 4-5. Plaintiffs also offer the testimony of Mizzell, Sparkman's coworker:

> A. I think that was it. We had some Foster Wheeler boilers, too, but I don't remember which ones.
> Q. What about the number 8, number 9 boilers?
> A. I want to say number 8 was a Foster Wheeler, but I might be wrong. I can't tell you exactly.
> Q. You're just not sure?
> A. I'm not sure.

Mizzell Dep. 44:8-14. Mizzell further testified that Foster Wheeler might have manufactured the nonstop valve and the nonreturn valve on the number 8 boiler. Id. at 78:6-19. He also recalled that "Foster Wheeler or Babcock's . . . the only two [he] [could] think of" manufactured the number 5 boiler. Id. at 66:6-25. Drawing all

inferences in favor of the plaintiffs, a jury could conclude that Foster Wheeler manufactured boiler number 8.  However, to conclude Foster Wheeler manufactured boiler number 5 would be mere speculation.

Although Mizzell and Fred testified to Sparkman's work on boiler number 8, they do not indicate Sparkman was exposed to asbestos in connection to this boiler.  Mizzell testified to asbestos insulation in the piping and behind the metal lagging on boiler number 8, but he did not recall Sparkman being around when this insulation was manipulated in any way.  Mizzell Dep. 76:15-77:21.  See Henderson, 644 S.E.2d at 727 (finding that the mere presence of "static asbestos" does not equate to asbestos exposure); Hurley, 2014 WL 1794116, at *3 (finding that, to satisfy the Lohrmann standard, "there must be evidence that the plaintiff worked in proximity to the asbestos-containing product when it was manipulated").  In addition, Mizzell could not recall whether the insulation used on the valves of boiler number 8 contained asbestos.  Mizzell Dep. 79:3-19.  Fred only testified that boiler number 5 contained asbestos.  Fred Dep. 45:4-13.  His testimony did not indicate whether boiler number 8 also contained asbestos.

Similarly, Lonnie's testimony does not indicate that Sparkman was exposed to asbestos from a Foster Wheeler boiler.  When asked about the dust Sparkman would have breathed from his proximity to Lonnie's insulation work on boilers, Lonnie did not mention boiler number 8.  Rather, Lonnie's response concerned boiler numbers 5, 6, and 7.  Lonnie Dep. 67:16-68:7.  He had previously testified that these were Riley Stoker boilers to which he had applied block and mud insulation.  Id. at 36:5-11.  Lonnie does not mention ever working on boiler number 8.  Therefore, all of the deposition testimony, taken in the light most favorable to plaintiffs as the non-moving party, fails to raise a

9

genuine dispute as to whether Sparkman was exposed to asbestos from a specific product manufactured by Foster Wheeler, much less on a frequent and regular basis.  <u>Henderson</u>, 644 S.E.2d at 727.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Foster Wheeler's motion to strike and motion for summary judgment.

**AND IT IS SO ORDERED**.

*/s/ signature/*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 29, 2014**
**Charleston, South Carolina**