# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| TERENCE J. SPARKMAN AND LEONARD SPARKMAN, *personal representatives of the estate of* ELIJAH SPARKMAN, JR., *deceased*, | ) ) ) ) ) | No. 2:12-cv-02957-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| A.W. CHESTERTON COMPANY; FOSTER WHEELER ENERGY CORP.; GOULDS PUMPS, INC.; METROPOLITAN INSURANCE COMPANY; RESEARCH-COTTRELL, INC. *n/k/a* AWT AIR COMPANY, INC; RILEY POWER, INC.; UNIROYAL, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Goulds Pumps, Inc.'s ("Goulds") motion for summary judgment. For the reasons set forth below, the court grants Goulds's motion.

## I.  BACKGROUND

From 1954 to 2000, decedent Elijah J. Sparkman ("Sparkman") was employed in various capacities at Westvaco Pulp and Paper Mill ("Westvaco") in North Charleston, South Carolina, including as a laborer, boiler operator, evaporator operator, and precipitator operator. Pls.' Resp. to Goulds's Mot. 2. Sparkman was diagnosed with mesothelioma and died of this disease on October 20, 2012. Id. Plaintiffs Terence J. Sparkman and Leonard Sparkman ("plaintiffs") allege Sparkman's mesothelioma resulted from a prolonged exposure to asbestos while employed at Westvaco. Id. Relevant to this

1

motion, plaintiffs allege that Sparkman was exposed to asbestos from Goulds's asbestos-containing pumps while employed at Westvaco. Id. Their expert in this matter, Dr. Richard Kradin, has opined to a reasonable degree of medical certainty that Sparkman's malignant mesothelioma was caused by cumulative exposure to asbestos from his work at Westvaco, including his work with and around asbestos-containing pumps. Id.

Although Sparkman passed away before he could be deposed in this matter, two of his coworkers have provided testimony as to how Sparkman's work with and around Goulds products at Westvaco allegedly exposed him to asbestos. Id. Taken in the light most favorable to the non-moving party, as required on a motion for summary judgment, their testimony presents the following evidence.

Lonnie Kessler ("Kessler") worked around Sparkman in the recovery department at Westvaco on a weekly basis from 1976 to 1988. Kessler Dep. 19:3-5, 66:1-6, 67:2-5. Kessler recalled that Sparkman worked as a lancer, operator and pool man at that time. Id. at 65:7-13, 144:8-14. According to Kessler, a lancer's responsibilities included removing and installing gaskets on pumps throughout the facility. Kessler Dep. 71:17-24. Kessler could not recall whether Sparkman performed work on a Goulds pump; however, he could place Sparkman "around" workers who removed and installed gaskets on Goulds pumps. Id. at 73:17-20, 136:24-137:13, 141:25-142:19. Specifically, Kessler testified that millwrights worked on Goulds pumps every day, and Sparkman would have worked around millwrights during his shifts as an operator and pool man. Id. at 71:141:25-142:4, 144:8-21. He testified that Sparkman would have been "right beside" the millwrights "if he had to turn the valves" on the pumps. Id. at 142:8-9. Kessler observed Sparkman turning the valves while someone was working on a Goulds pump on

two or three occasions.  Id. at 142:10-14.  He testified that the work of removing and installing gaskets in the pumps would have exposed Sparkman to asbestos.  Id. at 71:17-24.

Westvaco's personnel records reveal that Sparkman was an assistant operator from January to August of 1977 and an evaporator operator from August 1977 to July 1979.  Research-Cottrell's Mot. Ex. D.  Sparkman was again an evaporator operator from July 1983 to July 1984 and a control room operator from May 1984 to July 1984.  Pls.' Resp. to Research Cottrell's Mot. Ex. I at 4.  All of these "operator" positions took place in the recovery department of Westvaco.  Research-Cottrell's Mot. Ex. D; Pls.' Resp. to Research Cottrell's Mot. Ex. I at 4.

James Barnes ("Barnes") first met Sparkman in 1970 when he began his employment at Westvaco as a laborer.  Barnes Dep. 10:2-22, 11:2-3.  Barnes testified that he observed Sparkman move insulation out of the way to open or close a valve on the pumps, a process that released dust into the air.  Id. at 76:25-77:14.  Barnes thought that the pumps at Westvaco were Goulds pumps; however, he was not sure and did not "recall too many of them."  Id. at 76:19-24.  Barnes did not know whether Sparkman ever removed insulation from a Goulds pump.  Id. at 77:17-20.

Kessler testified that Anchorage supplied the packing applied to Goulds pumps and did not know who supplied the gaskets.  Kessler Dep. 143:1-6, 11-14.  Kessler further testified that Westvaco placed the insulation of other manufacturers on Goulds pumps.  Id. at 156:8-157:5.  He did not know if Westvaco had replaced the original gaskets and packing in the Goulds pumps prior to Sparkman being in their vicinity.  Id. at 144:8-20.  In its answer to interrogatories in an unrelated case, Goulds admits that, prior

3

to approximately 1985, it "sold some centrifugal pumps with asbestos-containing casing gaskets and stuffing box packing." Pls.' Resp. to Goulds's Mot. Ex. E at 2. Additionally, in a 1963 bulletin, Goulds specified the use of blue African asbestos for packing and gaskets in its pumps. Id. Ex. F at 10.

On September 14, 2012, Sparkman filed a personal injury action in the Court of Common Pleas in Charleston County, alleging claims of breach of implied warranty, breach of post-sale duty to warn, false representation, negligence, recklessness, and strict liability in tort. Defendants then removed the action to this court on October 12, 2012, alleging jurisdiction based on diversity of citizenship. On April 23, 2013, following Sparkman's death, the plaintiffs filed an amended complaint as the legal beneficiaries of Sparkman's estate and added a claim for wrongful death. On September 8, 2014, Goulds, filed a motion for summary judgment, to which the plaintiffs responded on September 24, 2014. On October 1, 2014, Goulds filed a reply. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

4

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

This case is predicated on diversity jurisdiction and was removed to federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Ass'ns., P.A. v. Allstate Ins. Co., 599 U.S. 393, 417 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). Because the development of the disease was the last event necessary to give rise to a cause of action, and because the evidence indicates that this occurred in South Carolina, South Carolina substantive law applies. See Moosally v. W.W. Norton & Co., 594 S.E.2d 878, 888 (S.C. Ct. App. 2004) ("Until the exposure to asbestos resulted in injury or damage, [plaintiff's] tort cause of action did not accrue.").

### III.  DISCUSSION

#### A.     Law of Causation in Asbestos Cases

In order for a claim of workplace asbestos exposure to be actionable, the plaintiff must establish sufficient proximate cause between the injury and exposure to asbestos from a particular product. Henderson v. Allied Signal, Inc., 644 S.E.2d 724, 727 (S.C. 2007). The South Carolina Supreme Court has adopted the "frequency, regularity and proximity test" set forth by the Fourth Circuit in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986). Henderson, 644 S.E.2d at 727. Under the Lohrmann

standard, "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann, 782 F.2d at 1162. Such circumstantial evidence may include testimony from witnesses who were in the same vicinity as the plaintiff and who can "identify the products causing the asbestos dust that all people in that area . . . inhaled." Roehling v. Nat.'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir. 1986). The mere presence of "static asbestos" does not equate to asbestos exposure. Henderson, 644 S.E.2d at 727.

  Plaintiffs attempt to differentiate Lohrmann from the facts of this case and argue a more relaxed causation standard applies. Pls.' Resp. to Goulds's Mot. 10. Specifically, the plaintiff in Lohrmann suffered from asbestosis, whereas Sparkman contracted mesothelioma. Lohrmann, 782 F.2d at 1158; Pls.' Resp. to Goulds's Mot. 8. Plaintiffs emphasize that the Seventh Circuit has applied a lower standard for causation in mesothelioma cases because the disease "can develop after only minor exposures to asbestos fibers." Tragarz v. Keene Corp., 980 F.2d 411, 410 (7th Cir. 1992) (citing Wehmeier v. UNR Indus., Inc., 572 N.E.2d 320, 337 (Ill. App. Ct. 1991)).

  South Carolina law controls, however, and in Henderson, the South Carolina Supreme Court expressly adopted the causation standard for exposure set forth in Lohrmann. Henderson, 644 S.E.2d at 727. Importantly, the plaintiff in Henderson "contracted mesothelioma and other asbestos-related illnesses." Id. at 725. Accordingly, the plaintiffs must follow established South Carolina precedent and satisfy the "frequency, regularity, and proximity test." See e.g., Fritz v. Bayer Cropscience, Inc.,

6

2011 WL 4828485, at *1 n.1 (E.D. Pa. Feb. 1, 2011) (noting "the Supreme Court of South Carolina explicitly adopted the 'frequency, regularity, and proximity test'" and consequently applying this causation test to mesothelioma case) (citing Henderson, 644 S.E.2d at 727); Blackmon v. Owens-Illinois, Inc., 2011 WL 4790631, at *1 n.1 (E.D. Pa. Jan. 28, 2011) (same finding)).

### B. Goulds's Motion for Summary Judgment

Goulds argues that summary judgment is proper for two reasons. First, Goulds contends that there is no evidence that Sparkman was exposed to an asbestos-containing product placed into the stream of commerce by Goulds. Goulds's Mot. 1. Second, Goulds argues that it is not responsible for asbestos-containing components that it did not manufacture or otherwise supply. Id. at 10.

#### 1. Asbestos Exposure to Components Original to Goulds Pumps

The plaintiffs have presented deposition testimony that Sparkman worked with and around Goulds pumps. Barnes testified that Sparkman was exposed to dust when he moved insulation on Goulds pumps out of the way to turn a pump valve. Barnes Dep. 76:25-77:14. In addition, Kessler testified that Sparkman would have been exposed to asbestos-containing gaskets in Goulds pumps when he worked around the millwrights at Westvaco, which Kessler personally observed on two or three occasions. Kessler Dep. 71:17-24, 142:10-14. He testified that the millwrights worked with Goulds pumps every day, and Sparkman would have worked around millwrights during his shifts as a lancer, operator, and pool man. Id. at 141:25-142:4. Plaintiffs have presented evidence that Goulds supplied some asbestos-containing gaskets and packing with its pumps until the mid-1980s. Pls.' Resp. to Goulds's Mot. Ex. E at 2. Notably, there is no evidence that

Sparkman was in the vicinity of the removal or installation of gaskets and packing original to Goulds pumps. Westvaco's personnel records indicate that Sparkman worked as an operator for a total of approximately four years during the time period relevant to Kessler's testimony. Research-Cottrell's Mot. Ex. D; Pls.' Resp. to Research-Cottrell's Mot. Ex. I at 4. Therefore, there is evidence on the record such that a reasonable jury could conclude that Sparkman was exposed to asbestos-containing insulation and gaskets used in connection with Goulds pumps on a frequent, regular, and proximate basis such that it was a substantial cause in the development of his mesothelioma. Henderson, 644 S.E.2d at 727.

However, there is no evidence that the insulation and gaskets to which Sparkman would have been exposed was manufactured or otherwise supplied by Goulds. See Campbell v. A.W. Chesterton Co., 2012 WL 5392828, *1 n.1 (E.D. Pa. Oct. 16, 2012) (applying South Carolina law and finding no evidence IMO supplied asbestos-containing packing with its pumps to which plaintiff was exposed, despite deposition testimony that IMO had distributed some pumps with asbestos-containing packing materials in the past); cf. Logan v. Air Prods. and Chems., 2014 WL 3891366, *4 (M.D.N.C. Aug. 7, 2014) (finding plaintiffs met the Lohrmann standard as to asbestos-containing gaskets and packing supplied by Crane where coworker testified that decedent had "worked on hundreds of original gaskets on new Crane valves for approximately twenty years," and had "personally observed [decedent] working on brand new Crane valves"). Therefore, Goulds could only be liable for this exposure if South Carolina law does not recognize the "bare metal defense." Campbell, 2012 WL 53902828, *1 n.1.

### 2.     The Bare Metal Defense

Plaintiffs allege that, because "Goulds knew the asbestos-containing components originally supplied with its pumps were hazardous, and that asbestos-containing replacement components would be used necessarily with its pumps, . . . Goulds had a duty to warn consumers of the dangers of the asbestos inherent on its pumps." Pls.' Resp. to Goulds's Mot. 11.  Plaintiffs argue Goulds's failure to warn renders the corporation liable for Sparkman's injuries.  Id.

Goulds responds that it is not liable for Sparkman's injuries because there is no evidence that he has ever been exposed to asbestos from pump components supplied by Goulds.  Goulds's Mot. 9.  Goulds's argument is known as the "bare metal defense." See Campbell, 2012 WL 5392828, at *1 n.1 (explaining that a pumps manufacturer defending plaintiff's claims under South Carolina law asserted the bare metal defense when it argued it was not "liable for injury arising from asbestos-containing component parts used in connection with its pump, . . . which it did not manufacture or supply").  "The 'bare metal' defense, an affirmative defense, provides that a manufacturer has no duty to warn about potential dangers from exposure to a part of its product if the manufacturer did not make or distribute the part."  4 Toxic Torts Litigation Guide § 33:18.  Courts that have adopted the bare metal defense require the plaintiff to "prove exposure to a specific product made by a specific company during a time period that would merit a finding of causation."  Id.

The validity of the bare metal defense in asbestos cases has not yet been directly addressed by an appellate court in South Carolina.  Campbell, 2012 WL 5392828, at *1, n.1.  Therefore, this court must predict how the South Carolina Supreme Court would

rule on the issue. "In making that prediction, we may consider lower court opinions in South Carolina, the teachings of treatises, and 'the practices of other states.'" Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005) (quoting Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999)).

"An analysis of current product liability law in [South Carolina] serves as a benchmark for determining whether the principles of the bare metal defense comport with controlling jurisdictional authority." Dalton v. 3M Co., 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (analyzing how the Mississippi Supreme Court would decide the issue of the bare metal defense). Under South Carolina law, a "products liability case may be brought under several theories, including negligence, strict liability, and warranty." Rife v. Hitachi Constr. Mach. Co., 609 S.E.2d 565, 568 (S.C. Ct. App. 2005). Regardless of the theory on which the plaintiff seeks recovery, a plaintiff must show that: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant. Id.

Under South Carolina products liability law, "a plaintiff must prove the product defect was the proximate cause of the injury sustained." Small v. Pioneer Mach., Inc., 494 S.E.2d 835, 842 (S.C. Ct. App. 1997) (citations omitted). The touchstone of proximate cause in South Carolina is foreseeability. Koester v. Carolina Rental Ctr., Inc., 443 S.E.2d 392, 394 (S.C. 1994) (citing Young v. Tide Craft, 242 S.E.2d 671, 675 (S.C. 1978)). "An injury is foreseeable if it is the natural and probable consequence of a breach of duty." Parks v. Characters Night Club, 548 S.E.2d 605, 609 (S.C. Ct. App.

10

2001) (citing Olson v. Faculty House, 544 S.E.2d 38, 47 (S.C. Ct. App. 2001)). "While it is not necessary that the actor must have contemplated the particular event that occurred, the actor cannot be charged with that which is unpredictable or could not be expected to happen." Small, 494 S.E.2d at 842 (citing Young, 242 S.E.2d at 675).

Indeed, foreseeability of dangerous use is required in a failure to warn claim. See Livingston v. Noland Corp., 362 S.E.2d 16, 18 (S.C. 1987). More specifically, a supplier and manufacturer of product are liable for failing to warn if they: (1) know or have reason to know a product is or is likely to be dangerous for its intended use; (2) have no reason to believe user will realize potential danger; and, (3) fail to exercise reasonable care to inform of its dangerous condition or of facts which make it likely to be dangerous. Id. (citing Gardner v. Q.H.S., Inc., 448 F.2d 238 (4th Cir. 1971)).

A failure to warn claim may be based on the theory of negligence or strict liability in tort. "The distinction between strict liability and negligence in . . . failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven." Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 326 (S.C. Ct. App. 1995) (quoting Bilotta v. Kelley Co., 346 N.W.2d 616, 622 (Minn. 1984)).

The strict liability in tort theory is derived from Restatement (Second) of Torts § 402A. South Carolina Code section 15-73-10 codifies the strict liability approach for defective products set forth in Restatement (Second) of Torts § 402A. Schall v. Sturm, Ruger Co., 300 S.E.2d 735, 736 (S.C. 1983). Section 15-73-10 defines who may be liable for a defective product as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability

>    for physical harm caused to the ultimate user or consumer, or to his property, if
>    > (a) the seller is engaged in the business of selling such a product, and
>    > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

S.C. Code Ann. § 15-73-10. A product may be unreasonably dangerous, and therefore in a defective condition, if the seller fails to "place[] an adequate warning on the product regarding its use." See Allen, 505 S.E.2d at 357 (citing Restatement (Second) of Torts § 402A cmt. j (1965); Anderson v. Green Bull, Inc., 471 S.E.2d 708 (S.C. Ct. App. 1996)). The rationale given for strict liability in 402A emphasizes the manufacturer's responsibility for its own product. See Restatement (Second) of Torts § 402A cmt. c (1965) ("[P]ublic policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them . . . . [T]he proper persons to afford [protection to consumers] are those who market the products.").[1]

In Buaghman v. General Motors Corp., 780 F.2d 1131, 1133 (4th Cir. 1986), the Fourth Circuit echoed this rationale when granting summary judgment for a manufacturer on a plaintiff's failure to warn claim brought under South Carolina law. In Baughman, plaintiff, a tire mechanic, sued GMC following a wheel explosion accident for failing to "warn him that the wheel[s] [on its trucks] could explode if fully inflated." Id. at 1132. GMC argued that it could not be held liable because the wheel that exploded was a replacement wheel, which it did not manufacture. Id. The Fourth Circuit agreed. Specifically, the court held that despite the fact that GMC had selected the tire at issue, it could not be held liable since it did not have the opportunity to inspect the component

---

[1] The South Carolina legislature has adopted the comments to 402A as legislative intent. S.C. Code Ann. § 15-73-30.

part, did not benefit from the sale of the component part, and did not represent to the public that the component part was its own.  Id. at 1132-33.

In short, products liability law in South Carolina does not point directly for or against recognition of the bare metal defense.  The strong emphasis on foreseeability is compelling because here, plaintiffs have presented evidence that Goulds sold some pumps with asbestos-containing gaskets and packing until the mid-1980s.  See Pls.' Resp. to Goulds's Mot. Ex. E at 2.  In addition, Goulds specified the use of blue African asbestos for packing and gaskets in its pumps in a 1963 bulletin.  Id. Ex. F at 10.  Therefore, Goulds cannot easily claim it was not foreseeable that the replacement of components on its pumps could cause asbestos exposure.  See Koester v. Carolina Rental Ctr., Inc., 443 S.E.2d 392,  (S.C. 1994) (finding summary judgment in favor of equipment company improper on plaintiff's negligence and strict liability claims where, although defendant did not rent plaintiff the rope that broke and caused his fall, it was foreseeable to defendant that the rope would be worn by persons renting the equipment).  However, the strict liability rationale does not support finding Goulds liable for a failure to warn under these facts.  See Restatement (Second) of Torts § 402A cmt. c (1965).

A survey of the validity of the bare metal defense in other jurisdictions is more helpful to the court's present task.  Some courts have rejected the bare metal defense under facts similar to the present case.  See, e.g., In re Asbestos Products Liab. Litig., (Hoffeditz) 2011 WL 5881008, at *1 (E.D. Pa. July 29, 2011) (finding a duty to warn where defendant knew asbestos-containing replacement brakes would be used on its vehicles); Chicano v. General Electric Co., 2004 WL 2250990, at *6 (E.D. Pa. 2004) (finding a genuine issue of material fact as to "whether GE could reasonably foresee that

13

its turbines would be combined with asbestos-containing insulation, which together constituted a defective product, absent appropriate warnings of the dangers of asbestos"); Berkowitz v. A.C. & S., Inc., 733 N.Y.S.2d 410, 412 (N.Y. App. Div. 2001) (finding that, where there was evidence indicating defendant knew that asbestos insulation would likely be used on its pumps, it did not "necessarily appear that [defendant] had no duty to warn concerning the dangers of asbestos that it neither manufactured or installed on its pumps"); Curry v. American Standard Inc., No. 7:09-cv-10288, at *3 (S.D.N.Y. Dec. 6, 2010) (finding that, where defendant "meant its products to be used with asbestos containing components or knew that its products would be used with such components, the company remain[ed] potentially liable for injuries resulting from those third-party manufactured and installed components").

However, "the majority of courts embrace the principles of the bare metal defense and refuse to impose liability upon manufacturers for the dangers associated with asbestos-containing products manufactured and distributed by other entities." Dalton, 2013 WL 4886658, at *7; see, e.g., Lindstrom v. A–C Prod. Liab. Trust, 424 F.3d 488, 495 (6th Cir. 2005); Morgan v. Bill Vann Co., 969 F. Supp. 2d 1358, 1369 (S.D. Ala. 2013); Conner v. Alfa Laval Inc., 842 F.Supp.2d 791, 801 (E.D. Pa. 2012); Surre v. Foster Wheeler LLC, 831 F.Supp.2d 797, 801 (S.D.N.Y. 2011); Niemann v. McDonnell Douglas Corp., 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); O'Neil v. Crane Co., 266 P.3d 987, 997–98 (Cal. 2012); Paulus v. Crane Co., 169 Cal. Rptr. 3d 373 (Cal. Ct. App. 2014); Taylor v. Elliott Turbomachinery Co., 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); In re Asbestos Litig. (Howton), 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); In re Asbestos Litig. (Wolfe), 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb.

28, 2012); Whiting v. CBS Corp., 982 N.E.2d 1224, at *1 (Mass. App. Ct. 2013); Ford Motor Co. v. Wood, 703 A.2d 1315, 1332 (Md. Ct. Spec. App. 1998); Rumery v. Garlock Sealing Techs., 2009 WL 1747857, at *1 (Me. Super. Ct. Apr. 24, 2009); Schaffner v. Aesys Technologies, LLC, 2010 WL 605275, at *6 (Pa. Super. Ct. Jan. 21, 2010); Braaten v. Saberhagen Holdings, 198 P.3d 493, 498–99 (Wash. 2008); Simonetta v. Viad Corp., 197 P.3d 127, 134–135 (Wash. 2008).

The rationale for strict liability under South Carolina product liability law comports with the principles of the bare metal defense. Specifically, under comment c of 402A, Goulds should not be held liable for products which it did not manufacture, supply or market. See Restatement (Second) of Torts § 402A cmt. c (1965). In light of this rationale, and the persuasive weight of authority from other jurisdictions adopting the bare metal defense, the South Carolina Supreme Court would likely find a manufacturer is not subject to a duty to warn about potential dangers from exposure to parts of its product which it did not manufacture or otherwise supply. Accordingly, Goulds cannot be liable for exposure to asbestos from products that it did not manufacture or otherwise supply.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Goulds's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 29, 2014**
**Charleston, South Carolina**