**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| TERENCE J. SPARKMAN AND | ) | |
| LEONARD SPARKMAN, *personal* | ) | |
| *representatives of the estate of* ELIJAH | ) | |
| SPARKMAN, JR., *deceased*, | ) | No. 2:12-cv-02957-DCN |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| A.W. CHESTERTON COMPANY; | ) | |
| FOSTER WHEELER ENERGY CORP.; | ) | |
| GOULDS PUMPS, INC.; | ) | |
| METROPOLITAN INSURANCE | ) | |
| COMPANY; RESEARCH-COTTRELL, | ) | |
| INC. *n/k/a* AWT AIR COMPANY, INC; | ) | |
| RILEY POWER, INC.; UNIROYAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Research-Cottrell, Inc.'s ("Research-Cottrell") motion for summary judgment. For the reasons set forth below, the court denies Research-Cottrell's motion for summary judgment.

### I. BACKGROUND

From 1954 to 2000, decedent Elijah J. Sparkman ("Sparkman") was employed in various capacities at Westvaco Pulp and Paper Mill ("Westvaco") in North Charleston, South Carolina, including as a laborer, boiler operator, evaporator operator and precipitator operator. Pls.' Resp. to Research-Cottrell's Mot. 1-2. Sparkman was diagnosed with mesothelioma and died of this disease on October 20, 2012. Id. at 2. Plaintiffs Terence J. Sparkman and Leonard Sparkman ("plaintiffs") allege Sparkman's mesothelioma resulted from a prolonged exposure to asbestos while employed at

1

Westvaco. Id. Relevant to this motion, plaintiffs allege that Sparkman was exposed to asbestos from Research-Cottrell's asbestos-containing precipitators while employed at Westvaco. Id. at 1-2. Their expert in this matter, Dr. Richard Kradin, has opined to a reasonable degree of medical certainty that Sparkman's malignant mesothelioma was caused by cumulative exposure to asbestos from his work at Westvaco, including his work with and around asbestos-containing precipitators. Id.

Although Sparkman passed away before he could be deposed in this matter, four of his coworkers have provided testimony as to how his work with and around precipitators at Westvaco exposed him to asbestos. Id. Taken in the light most favorable to the non-moving party, as required on a motion for summary judgment, their testimony presents the following evidence.

Westvaco personnel records indicate that Sparkman worked as a "precipitator man" from June 1974 through May 1975. Research-Cottrell's Mot. Ex. D. A precipitator is a building size structure used in the paper making process to filter dust and dirt from the combustion gases emitted by boilers at the facility. Research-Cottrell's Mot. 2. Richard Mizzell ("Mizzell"), Sparkman's coworker at Westvaco, testified that Sparkman was a "precipitator man" around 1970 or 1971. Mizzell Dep. 26:3-5. However, Westvaco's personnel records reveal that Sparkman was a pool man from May 1968 to September 1970. Research-Cottrell's Mot. Ex. D. He then became a utility man and was employed in this capacity until June 1974. Id. All of these positions took place in the recovery department. Id.

According to Mizzell, there were six or seven precipitators located in the recovery department of Westvaco, including precipitator "9A," and Sparkman worked on all of

2

them.  Mizzell Dep. 30:19-25.  Fred Kessler ("Fred") worked with Sparkman "at times" from October 1971 to March 1979.  Fred Dep. 22:2-22, 24:23-25.  Fred testified that all of the precipitators in the recovery department, including precipitator number 9, "may" have been manufactured by Research-Cottrell.  Id. at 63:14-25, 67:1-3.  He recalled that Sparkman worked on all of the precipitators in the recovery department as a "precipitator operator."  Id. at 65:12-18.

Mizzell testified that he helped Sparkman perform his work on precipitators from 1969 to 1972.  Mizzell Dep. 28:16-23; 31:1-6.  He recalled that they would use a five to eight pound hammer to beat the "salt cakes" from the precipitator plates.  Id. at 29:10-18.  According to Mizzell, in order to perform this task, they were required to physically remove the door and go inside of the precipitator.  Id. at 29:19-30:2.  Mizzell specifically recalled Sparkman working on a Research-Cottrell precipitator on 15 to 20 occasions.  Id. at 69:18-22.  He testified that Sparkman was exposed to the asbestos insulation used on the precipitators at Westvaco.  Id. at 84:5-10.

James Barnes ("Barnes") testified that when he was a laborer at Westvaco from 1970 to 1975, he worked with and around Sparkman, and helped to assist Sparkman with his work on precipitator numbers 6 and 7.   Barnes Dep. 30:11-25, 31:22-32:8, 66:21-23.  Barnes recalled cleaning out these precipitators with Sparkman "a few times" and testified that this process could take anywhere from four to five hours to three or four days.  Id. at 67:14-68:5.  Barnes also observed Sparkman clean precipitator number 1, but could not testify how often Sparkman worked on this precipitator.  Id. at 68:19-24, 69:7-10.

Sparkman worked near precipitators after his time as a precipitator man ended. Pls.' Resp. 3. Lonnie Kessler ("Lonnie"), Fred's brother, worked as an insulator at Westvaco from 1976 to 1988, where he was responsible for insulating the pipes throughout the facility, including the pipes attached to precipitators. Lonnie Dep. 30:12-19, 35:17-36:23. During this time, Lonnie and Sparkman worked around each other on a weekly basis. Id. at 67:2-5. Lonnie testified that his insulation work would create dust that Sparkman would have inhaled when working near him. Id. at 67:16-24. He recalled doing "patch jobs" on all of the precipitators, which included precipitator number 9, when Sparkman was around. 99:5-11, 100:23-101:4, 102:3-5. This process involved replacing the insulation on certain parts of the precipitators with "Kaylo pipe covering" insulation or non-asbestos containing mineral wool insulation. Id. at 99:5-11, 100:23-101:4, 102:12-17.

On September 14, 2012, Sparkman filed a personal injury action in the Court of Common Pleas in Charleston County, alleging claims of breach of implied warranty, breach of post-sale duty to warn, false representation, negligence, recklessness, and strict liability in tort. Defendants then removed the action to this court on October 12, 2012, alleging jurisdiction based on diversity of citizenship. On April 23, 2013, following Sparkman's death, the plaintiffs filed an amended complaint as the legal beneficiaries of Sparkman's estate and added a claim for wrongful death. On September 8, 2014, Research-Cottrell filed a motion for summary judgment, to which plaintiffs responded on September 24, 2014. On September 29, 2014, Research-Cottrell filed a reply. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

This case is predicated on diversity jurisdiction and was removed to federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Ass'ns., P.A. v. Allstate Ins. Co., 599 U.S. 393, 417 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  Because the development of the disease was the last event necessary to give rise to a cause of action, and because the evidence indicates that this occurred in South Carolina, South Carolina substantive law applies.  See Moosally v.

W.W. Norton & Co., 594 S.E.2d 878, 888 (S.C. Ct. App. 2004) ("Until the exposure to asbestos resulted in injury or damage, [plaintiff's] tort cause of action did not accrue.").

### III.  DISCUSSION

#### A.     Law of Causation in Asbestos Cases

In order for a claim of workplace asbestos exposure to be actionable, the plaintiff must establish sufficient proximate cause between the injury and exposure to asbestos from a particular product.  Henderson v. Allied Signal, Inc., 644 S.E.2d 724, 727 (S.C. 2007).  The South Carolina Supreme Court has adopted the "frequency, regularity and proximity test" set forth by the Fourth Circuit in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986).  Henderson, 644 S.E.2d at 727.  Under the Lohrmann standard, "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked."  Lohrmann, 782 F.2d at 1162.  Such circumstantial evidence may include testimony from witnesses who were in the same vicinity as the plaintiff and who can "identify the products causing the asbestos dust that all people in that area . . . inhaled."  Roehling v. Nat.'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir. 1986).  The mere presence of "static asbestos" does not equate to asbestos exposure.  Henderson, 644 S.E.2d at 727.

Plaintiffs attempt to differentiate Lohrmann from the facts of this case and argue a more relaxed causation standard applies.  Pls.' Resp. 8-9.  Specifically, the plaintiff in Lohrmann suffered from asbestosis, whereas Sparkman contracted mesothelioma.  Lohrmann, 782 F.2d at 1158; Pls.' Resp. 8.  Plaintiffs emphasize that the Seventh Circuit

has applied a lower standard for causation in mesothelioma cases because the disease "can develop after only minor exposures to asbestos fibers." Tragarz v. Keene Corp., 980 F.2d 411, 410 (7th Cir. 1992) (citing Wehmeier v. UNR Indus., Inc., 572 N.E.2d 320, 337 (Ill. App. Ct. 1991)).

South Carolina law controls, however, and in Henderson, the South Carolina Supreme Court expressly adopted the causation standard for exposure set forth in Lohrmann. Henderson, 644 S.E.2d at 727. Importantly, the plaintiff in Henderson "contracted mesothelioma and other asbestos-related illnesses." Id. at 725. Accordingly, the plaintiffs must follow established South Carolina precedent and satisfy the "frequency, regularity, and proximity test." See e.g., Fritz v. Bayer Cropscience, Inc., 2011 WL 4828485, at *1 n.1 (E.D. Pa. Feb. 1, 2011) (noting "the Supreme Court of South Carolina explicitly adopted the 'frequency, regularity, and proximity test'" and consequently applying this causation test to mesothelioma case) (citing Henderson, 644 S.E.2d at 727); Blackmon v. Owens-Illinois, Inc., 2011 WL 4790631, at *1 n.1 (E.D. Pa. Jan. 28, 2011) (same finding)).

### B.    Research-Cottrell's Motion for Summary Judgment

Research-Cottrell argues that there is no evidence that Sparkman was exposed to asbestos for which it is responsible, and therefore plaintiffs cannot satisfy the "frequency, regularity, and proximity test" adopted in South Carolina. Research-Cottrell's Mot. 1. Plaintiffs respond that there is ample evidence to establish that Sparkman was exposed to asbestos from a Research-Cottrell precipitator. Pls.' Resp. to Research-Cottrell's Mot. 11.

Westvaco's personnel records directly conflict with Mizzell's testimony regarding the time period Sparkman worked as a precipitator man.  See Research-Cottrell's Mot. Ex. D.  However, the court need not address Mizzell's account of Sparkman's work as a precipitator man.  Plaintiffs have presented other evidence such that a reasonable jury could conclude that Sparkman was exposed to at least one asbestos-containing Research-Cottrell precipitator on a frequent, regular, and proximate basis such that it could be a substantial cause in the development of his mesothelioma.  Henderson, 644 S.E.2d at 727.  Regardless of the time period Sparkman was a precipitator man, Mizzell and Fred's testimony establish that Research-Cottrell precipitators were present in the recovery department while Sparkman worked at Westvaco.  Mizzell Dep. 69:18-22; Fred Dep. 63:14-25.  In addition, Mizzell, Fred, and Lonnie's testimony establish that precipitator number 9 was located in the recovery department while Sparkman worked at Westvaco.  Mizzell Dep. 30:19-25; Fred Dep. 66:6-8, 67:1-3; Lonnie Dep. 102:3-8.

Sparkman's work with and near precipitator number 9 is particularly important when viewed in conjunction with Research-Cottrell's records.  On November 15, 1979, the maintenance and service division of Research-Cottrell placed a purchase order for asbestos pad insulation to ship to Westvaco "[f]or [u]nit 9A."  Pls.' Resp. to Research-Cottrell's Mot. Ex. H at 40.  An invoice dated January 2, 1980 indicates this division shipped asbestos filler and gaskets made from asbestos cloth "for unit 9A" to Westvaco. Id. Ex. H at 45.  Further, in its discovery response, Research-Cottrell admits that it "supplied one or more precipitators to the job site [Westvaco]."  Id. Ex. G at 6.  From this evidence, a jury could conclude that Research-Cottrell manufactured unit 9A and supplied asbestos insulation to be used on this unit on at least one occasion.  Cf.

Lohrmann, 782 F.2d at 1163 (finding that invoices showing sales of certain Raymark products failed raise a genuine dispute as to causation when "there was no evidence to show when or where these products were used").

Lonnie's testimony raises a genuine dispute as to whether his insulation work on the precipitators in the recovery department exposed Sparkman to asbestos on a frequent and regular basis. Lonnie testified that his insulation work, such as "patch jobs," would create dust that Sparkman would have inhaled when working near him. Id. at 67:16-24, 99:5-9. The patch jobs involved replacing the insulation on certain parts of the precipitators with "Kaylo pipe covering" insulation or non-asbestos containing mineral wool insulation. Id. at 99:5-11, 100:23-101:4, 102:12-17. Lonnie testified that all of the precipitators were covered in insulation, and when doing the patch jobs, he would sometimes have to "cut out a piece" of the precipitator. Id. at 99:8-13, 100:20-25.

A jury could reconcile this testimony with the purchase order and invoice to find that Sparkman was exposed to asbestos through his proximity to Lonnie's insulation work on at least one Research-Cottrell precipitator. A reasonable jury could infer such work took place on a weekly basis over the course of twelve years. Therefore, plaintiffs have raised a genuine dispute as to whether Sparkman was exposed to asbestos from his work with and around a Research-Cottrell precipitator on a frequent and regular basis. See Owens-Corning Fiberglas Corp. v. Garrett, 682 A.2d 1143, 1157 (Md. 1996) (finding causation under the "frequency, regularity and proximity test" where invoices indicated the purchase of Kaylo for plaintiff's employer during the time he worked there, and testimony established that Kaylo was frequently used in the area where plaintiff regularly worked).

9

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** Research-Cottrell's motion for summary judgment.

**AND IT IS SO ORDERED**.

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 29, 2014**
**Charleston, South Carolina**