IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **TERRENCE J. SPARKMAN and LEONARD SPARKMAN, as Co-Personal Representatives of the Estate of ELIJAH SPARKMAN, JR.,** | ) ) ) ) ) | C/A NO. 2:12-CV-02957-DCN |
| **Plaintiffs,** | ) ) | MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF GOULDS PUMPS, INC. |
| VS. | ) ) ) | |
| **A.W. CHESTERTON COMPANY, et al,** | ) ) | |
| **Defendants.** | ) | |

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs Terrence J. Sparkman and Leonard Sparkman, as Co-Personal Representatives of the Estate of Elijah Sparkman, Jr., by and through counsel hereby submit this Motion for Reconsideration of the Court's Order [Dkt. No.154] granting Goulds Pumps, Inc.'s ("Goulds") Motion for Summary Judgment [Dkt. No.105]. As discussed fully herein, Plaintiffs respectfully request this Honorable Court GRANT the instant Motion for Reconsideration and DENY Goulds' Motion for Summary Judgment because (1) Mr. Sparkman was exposed to a defective product placed into the stream of commerce by Goulds for which Goulds is responsible under South Carolina law and (2) no jurisdiction, including South Carolina, has upheld the "bare metal defense" when the defendant specified the use of asbestos with its own product.

**ARGUMENT**

On December 29, 2014, this Court entered an Order granting summary judgment in favor of Goulds. In that Order, the Court found that "there is evidence on the record such that a reasonable jury could conclude that Sparkman was exposed to asbestos-containing insulation and

1

gaskets used in connection with Goulds pumps on a frequent, regular, and proximate basis such that it was a substantial cause in the development of his mesothelioma." [Dkt. No.154, p.8]. However, this Court concluded that "there is no evidence that the insulation and gaskets to which Sparkman would have been exposed was manufactured or otherwise supplied by Goulds. . . . Therefore, Goulds could only be liable for this exposure if South Carolina law does not recognize the "bare metal defense." *Id.* Plaintiffs respectfully request that this Honorable Court reconsider its ruling in light of the fact that Mr. Sparkman was exposed to a defective product placed into the stream of commerce by Goulds and for which Goulds is responsible under South Carolina law regardless of the applicability of the "bare metal defense."

1. **Mr. Sparkman was Exposed to a Defective Product Placed into the Stream of Commerce by Goulds for Which Goulds is Responsible under South Carolina Law.**

It is undisputed that South Carolina law imposes liability on a defendant for products it manufactures, sells, supplies, or designs, including component parts. *See* Ralph King Anderson, Jr., SOUTH CAROLINA REQUESTS TO CHARGE - CIVIL § 32-27 (2d ed. 2009); *Baughman v. General Motors Corp.*, 780 F.2d 1131, 1132 (4th Cir. 1986); *Duncan v. Ford Motor Co.*, 385 S.C. 119, 133, 682 S.E.2d 877, 884 (Ct. App. 2009); *Small v. Pioneer Machinery, Inc.*, 329 S.C. 448, 466, 494 S.E.2d 835, 844 (Ct. App. 1997). Similarly, it is black letter law in South Carolina that a manufacturer's liability also extends to foreseeable dangers resulting from the anticipated or intended use of its products. *See* Anderson, *supra*, § 32-23; *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 84 (4th Cir. 1962); *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589 (1994); *Claytor v. General Motors Corp.*, 277 S.C. 259, 286 S.E.2d 129 (1982); *Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 359-60, 191 S.E.2d 774, 870 (1972); *Mickle v. Blackmon*, 252 S.C. 202, 233, 166 S.E.2d 173, 187 (S.C. 1969). A manufacturer is "expected to anticipate the environment which is normal for the use of its product and…must

anticipate the reasonably foreseeable risks of the use of his product in such environment." *Mickle*, 252 S.C. at 233, 166 S.E.2d at 187 (quoting *Spruill*, 308 F.2d at 83-84). "[L]iability may be imposed upon a manufacturer or seller notwithstanding subsequent alternation of the product when the alternation of the product could have been anticipated by the manufacturer or seller." *Small v. Pioneer Machinery Inc.,* 329 S.C. at 466, 494 S.E.2d at 844.

In response to Goulds' motion for summary judgment, Plaintiffs argued that "[a]s the manufacturer of the pumps on which Mr. Sparkman worked with and around during his employment at Westvaco, Goulds had a duty to warn of the defective condition of its pumps when using asbestos-containing original and replacement gaskets and packing." Dkt. No.109, p.11. Notably omitted from this Court's Order granting summary judgment in favor of Goulds is discussion of the Plaintiffs' claims against Goulds for its own products—pumps—in addition to those products made by another manufacturer. Goulds' liability, in part, arises because ***its own pumps*** caused injury as manufactured, supplied, and designed by Goulds with asbestos gaskets and packing. In its prior answers to interrogatories, Goulds admits that, prior to approximately 1985, it "sold some centrifugal pumps with asbestos-containing casing gaskets and stuffing box packing." Pls.' Resp. to Goulds' Mot. Ex. E at 2; Order [Dkt. No.154, p.4]. Additionally, as evidenced by a 1963 bulletin, Goulds specified the use of blue African asbestos for packing and gaskets in its pumps. *Id.* Ex. F at 10. In sum, in addition to supplying asbestos with its pumps originally, Goulds **specified** that asbestos gaskets and packing continue to be used in connection with its pumps, particularly its pumps used in chemical processes, such as the pumps that were used at Westvaco Pulp & Paper Mill. Viewing all facts in the light most favorable to the Plaintiffs and drawing all justifiable inferences in their favor,[1] the evidence supports the

---

[1] "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v.*

conclusion that Goulds designed its pumps to be used with asbestos gaskets and packing and expected asbestos gaskets and packing to continue to be used with its pumps when the original asbestos components needed to be replaced.

This evidence is sufficient to survive summary judgment such that "a reasonable jury could conclude that Sparkman was exposed to asbestos-containing insulation and gaskets used in connection with Goulds pumps,"[2] pumps that were in "essentially the same condition as when [they] left the hands of the defendant." *Bragg v. Hi-Ranger, Inc.,* 319 S.C. 531, 539, 462 S.E.2d 321, 326 (Ct. App. 1995); *5 Star, Inc. v. Ford Motor Co.,* 408 S.C. 362, 367 n.3, 759 S.E. 2d 139, 142 (2014). Goulds placed the injury-causing pumps into the stream of commerce, and, as this Court found, there is ample evidence that Mr. Sparkman worked on and around Goulds pumps. Goulds' liability arises, in part, because its pumps caused injury as manufactured, supplied, and designed by Goulds with asbestos gaskets and packing. When the asbestos gaskets and packing were replaced with the same asbestos-containing materials that came with the pump,[3] it was not a "substantial change" in the condition of the product. The product remained the same as when sold—pumps containing asbestos gaskets and packing. Mr. Sparkman's injury was caused by **Goulds pumps** containing asbestos gaskets and packing that were no different than the gaskets and packing that came with the pumps originally. Goulds designed and sold its pumps with asbestos parts that were wear items that Goulds knew had to be replaced, there is

---

*Liberty Lobby,* 477 U.S. 242, 249 (1986). In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Id*. at 255; *see United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.")

[2] Order, Dkt. No.154, p.8

[3] *See* Dep. of Lonnie Kessler, dated May 29, 2014, at 79, 145-46 ("Q… Do you have any knowledge as to whether or not these gaskets that you're talking about contained asbestos? A. Yes, they had asbestos in them."); (When asked about Mr. Sparkman's asbestos exposure from a Goulds pump, Mr. Kessler responded "Well, all your pumps had gaskets.").

evidence that the replacement process itself created exposure to toxic asbestos dust, and the replacement parts were to Goulds' design specifications.

Courts across the country have recognized this principle in asbestos cases and have held the asbestos equipment manufacturer liable. For example, in Delaware the asbestos court has held that an equipment manufacturer may be held liable under a design defect theory if evidence showed the manufacturer specified, required, or recommended asbestos-containing products be used with its equipment. *See In re Asbestos Litig. (Grgich)*, No. N10C-12-011 ASB, 2012 Del. Super. LEXIS 144, at *10-*11, 2012 WL 1408982 (Super. Ct. Del. Apr. 2, 2012).[4] New York state and federal courts have similarly held repeatedly that valve manufacturer Crane bears liability for injuries caused by the asbestos gaskets and packing used with its valves. *See Matter of New York City Asbestos Litig. (Dummitt)*, 960 N.Y.S.2d 51, 2012 N.Y. Misc. LEXIS 4057, at *15-*24 (N.Y. Sup. Ct. 2012); *Sawyer v. A.C. & S, Inc.*, 938 N.Y.S.2d 23, 2011 N.Y. Misc. LEXIS 4162, at *6, *9-*16 (N.Y. Sup. Ct. 2011); *see also Sweredoski v. Alfa Laval, Inc.*, No. PC 2011-1544, 2013 R.I. Super. LEXIS 42, at *14-*15 (R.I. Super. Ct. Mar. 7, 2013) (same under Rhode Island law).

Most tellingly, even in the jurisdictions relied on by Defendants the courts have subsequently clarified that equipment manufacturers may be held liable if the evidence shows that the defendant expected that its product would be used with asbestos. For example, in *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1077 (2012), the Washington Supreme Court held that a respirator manufacturer owed a duty to warn of the danger of asbestos exposure inherent in the use of *its own products*, even though the defendant itself did not sell the asbestos. *Id.* at 1080. The evidence showed that the plaintiff was exposed to asbestos when cleaning the respirators for reuse, leading the court to determine that, "the respirator manufacturers' own products presented

---

[4] Unpublished cases attached as Exhibit A.

the inherent danger of exposure to asbestos when used as intended." *Id.* The court explained that, "*Simonetta* and *Braaten* do not control the present case because the duty at issue is to warn of the danger of asbestos exposure inherent in the use and maintenance of the defendant manufacturers' *own* products, the respirators." *Id.* at 1072. The Court was careful to note that the chain-of-distribution requirement "is not an absolute rule. This court has previously applied one of two generally recognized exceptions to the chain-of-distribution rule, i.e., when two sound products combine to create an unreasonably unsafe condition." *Id.* at 1080; *see also Morgan v. Aurora Pumps Co.*, 248 P.3d 1052 (2011) (reversing order granting summary judgment for defendant in a Navy equipment case). As such, whether Goulds is liable for Mr. Sparkman's injuries resulting from its defective pumps and the failure to warn of the hazards associated with the reasonably foreseeable use and maintenance of those pumps is an issue for the jury, and Goulds' Motion for Summary Judgment should properly be denied.

2. **<u>No Jurisdiction, including South Carolina, has Upheld the "Bare Metal Defense" when the Defendant Specified the Use of Asbestos with its own Product</u>**

In the Order granting summary judgment in favor of Goulds, this Court noted that South Carolina lower court opinions may prove helpful in deciding how the South Carolina Supreme Court would rule on the "bare metal defense" and "[a]n analysis of current product liability law in [South Carolina] serves as a benchmark for determining whether the principles of the bare metal defense comport with controlling jurisdictional authority." [Dkt. No.154, p.10] (quoting *Dalton v. 3M Co.,* 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013)). However, absent from this Court's Order is mention of the recent order of Judge D. Garrison Hill, who is the "Administrative Judge for asbestos litigation in the Circuit Courts for the State of South Carolina" to whom all asbestos related personal injury cases are assigned by the South Carolina

Supreme Court,[5] which addressed and dismissed similar arguments as those made by Goulds in the instant case.[6] On December 10, 2014, Judge Hill issued an order denying in part and granting in part Defendant Crane Co.'s Motion for Post-Trial Relief. In Crane Co.'s motions for judgment notwithstanding the verdict, Crane Co. made the same argument that Defendant Goulds Pumps, Inc. made in its Motion for Summary Judgment in the instant case, urging adoption of the "bare metal defense." In his order, Judge Hill held as follows:

> The term "bare metal" is misleading and, as used here, is semantic advocacy rather than a useful doctrinal description. There is no evidence Crane sold "bare metal" valves or pumps; in fact, the evidence is to the contrary… Crane contends that when its original asbestos parts wore out, the pump or valve somehow disappeared from the stream of commerce, even though it remained as an integral, working part of a massive industrial plant. Crane argues its legal responsibility ceased when the asbestos it supplied no longer accompanied the product….
>
> [However] . . . it was undisputed Crane placed into the stream of commerce products that not only contained asbestos, but <u>specified</u> they be replaced by asbestos parts. Such a scenario was explicitly mentioned by <u>O'Neil</u> as a problem its ruling did not address. Viewed objectively, the manufacturer's product- defective when it left Crane's hands because it contained asbestos <u>and</u> specified asbestos for future use- remained defective and unreasonably dangerous when its specifications were heeded not only by its owner/user, but by another manufacturer. These facts would enable a jury to find a "combined use" sufficient to remove Mr. Garvin's exposure from <u>O'Neil's</u> reach. . . .
>
> There was no evidence the replacement gaskets and packing manufactured by others were different in material or design from Crane's original supplied products or specifications. The evidence showed Crane long knew of the risk asbestos posed, and it occupied the best position in the chain of distribution to warn consumers of those risks. Crane knew asbestos gaskets and packing would not last as long as its bare metal valves or pumps; consequently it knew those parts would have to be replaced, and replaced with similar if not identical parts whose manufacture was guided by Crane's design and specifications. To say Crane was no longer part of the "chain of distribution" when the original gaskets

---

[5] *See* In Re: Asbestos Litigation Coordinated Docket, Master Discovery/Scheduling Order (Oct. 13, 2010) (Attached as Exhibit B).
[6] Order Denying in Part and Granting in Part Defendant Crane Co.'s Motion for Post-Trial Relief in *Garvin v. Agco Corp.,* No.2012-cp-40-6675 (Dec. 10, 2014). The *Garvin* Post-Trial Order was filed with this Honorable Court as Docket Entry No. 146-1.

> and packing wore out on its still-functioning product would be artificial, if not silly….
>
> The Court finds evidence sufficient for the jury to conclude that when Mr. Garvin worked on Crane valves, the valves were in "essentially the same condition as when [they] left the hands of the defendant." Bragg, 319 S.C. at 539. Crane placed the injury-causing product in the stream of commerce, and there was ample evidence that Mr. Garvin worked on original Crane valves and gaskets. Crane's liability arises because its own valves caused injury as manufactured, supplied, and designed by Crane with asbestos gaskets and packing. When the asbestos gaskets and packing were replaced with the same materials that came with the valve, it was not a "substantial change" in the condition of the product. The product remained the same as when sold-valves containing asbestos gaskets and packing.

*Garvin* Post-Trial Order, at 10-17.

Judge Hill upheld the jury verdict against Crane, finding that the issues of whether Crane's valves were in essentially the same condition when Mr. Garvin worked on them, and whether Crane could reasonably foresee that the asbestos gaskets and packing in valves would be replaced with asbestos materials, were for the jury. "If a manufacturer recommends, specifies, or requires that asbestos gaskets and packing be replaced with like materials, then the jury may conclude that the product is in essentially the same condition as when it left the manufacturer, that the manufacturer anticipated the subsequent alteration of the product, and that the manufacturer anticipated the reasonably foreseeable risks of using the product in an environment where routine repair and maintenance would require replacement of asbestos components." *Id.* at 18.

The touchstone of proximate cause in South Carolina is foreseeability. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994). Plaintiffs agree with this Honorable Court that "[t]he strong emphasis on foreseeability is compelling" based on the facts in this case that Goulds supplied and specified asbestos-containing component parts for continued use in its pumps. *See* Dkt. No.154, p.13. However, Plaintiffs do not agree that "[a]

survey of the validity of the bare metal defense in other jurisdictions is more helpful to the court's present task" or that "the strict liability rationale does not support finding Goulds liable for a failure to warn under these facts." *See id.* Judge Hill addressed both of these issues in his order and dismissed them in upholding the verdict against Crane.

"**No jurisdiction has approved the 'bare metal' defense in the teeth of such specification evidence**"—where the defendant specifies the use of asbestos with its own product. *Garvin* Post-Trial Order, at 12 (emphasis added). As Judge Hill explained:

> The only federal court of appeals that has approved the defense did so on the basis that the Plaintiff could show no exposure to asbestos products manufactured by the Defendants. Lindstrom v. A-C Product Liability Trust, et al., 424 F.3d 488 (6th Cir. 2005). But Lindstrom did not involve or address the issue of whether the Defendants specified asbestos-containing replacement parts. Judge Robreno, the MDL judge for federal asbestos claims, relied heavily on Lindstrom in holding the bare metal defense applicable in maritime cases, Conner v. Alfa Laval, Inc., 842 F.Supp.2d 791 (E.D.Pa 2012), but there too no evidence of exposure to Defendants' original asbestos products or specifications appeared in the record. Id. at 802. Likewise, the sharply divided "bare metal" decisions of the Washington supreme court did not confront this precise issue, and that court has sheepishly realized the awkward logical limits of the principle. *Compare* Braaten v. Saberhagen Holdings, Inc., 198 P.3d 493 (Wash. 2008) (no evidence Defendants manufactured, recommended or specified replacement asbestos gaskets or packing) *with* Macias v. Saberhagen Holdings, Inc., 282 P.3d 1069 (Wash. 2012) (respirator manufacturer not entitled to summary judgment even though it did not manufacture asbestos products to which plaintiff exposed; distinguishing Braaten and finding that respirator was specifically designed for use that would inherently cause exposure).
>
> O'Neil and other cases adopting the "bare metal" defense lean on Baughman v. General Motors Corp., 780 F.2d 1131 (4th Cir. 1986). Baughman dealt with tire rims, not asbestos. It is a decision that is best restricted to its facts. Mr. Baughman was injured when a CR-2 rim assembly exploded while he was changing a tire on a 1979 GMC truck. It was undisputed that GM did not design, manufacture, require or specify the use of the CR-2. The original rim assembly was a CR-3, which has a different design. The Fourth Circuit held as follows:
>
>> Where, as here, the defendant manufacturer did not incorporate the defective component part into its finished product and did not place the defective component into the stream of commerce, the rationale for imposing liability is no longer present. The manufacturer has not had an opportunity to test, evaluate, and inspect the component; it has derived no benefit from its sale; and it has not represented to the public that the component part is its own.

9

780 F.2d at 1132-33. The court did not discuss whether the result would have been different had GM specified the defective rim assembly. This is a fundamental point, for there was no claim that the original GM rim assembly was defective.

This latter fact also upends Crane's reliance on the policy rationales often articulated in support of the "bare metal" concept. Unlike GM, Crane had the opportunity to test and evaluate the asbestos gaskets and packing used in its valves and which injured Mr. Garvin (the jury was even given factors to use in deciding Crane's duty to test). There was no evidence the replacement gaskets and packing manufactured by others were different in material or design from Crane's original supplied products or specifications. The evidence showed Crane long knew of the risk asbestos posed, and it occupied the best position in the chain of distribution to warn consumers of those risks. Crane knew asbestos gaskets and packing would not last as long as its bare metal valves or pumps; consequently it knew those parts would have to be replaced, and replaced with similar if not identical parts whose manufacture was guided by Crane's design and specifications. To say Crane was no longer part of the "chain of distribution" when the original gaskets and packing wore out on its still-functioning product would be artificial, if not silly. The drafters of the Restatement of Torts (Second) § 402A well understood these practicalities:

> . . . the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Id. at Comment c. These comments have been incorporated by reference and codified as the official legislative intent of our strict liability statute for over 40 years. S.C. Code § 15-73-30.

In a recent thoughtful opinion, a federal district court in Chicago set forth the most sensible approach to the "bare metal" defense. Quirin v. Lorillard Tobacco Co., 2014 WL 804305 (N.D. Ill. 2014). Mr. Quirin claimed that his mesothelioma arose in part from exposure to asbestos while working with Crane valves as a machinist on the *USS Tolovana* from 1954-1957. The *Tolovana* utilized over 1000 Crane valves, some of which contained internal asbestos gaskets and packing. Crane also sold asbestos gaskets and packing, some of it purchased from third parties. The original gaskets and packing Crane supplied had likely been replaced before Quirin began service, and he could not specifically recall whether he had ever changed out packing original to a Crane valve. Indeed, there was "no direct evidence that Crane Co. supplied any replacement gaskets or packing that Mr. Quirin used on board." Id. at 3.

10

Crane moved for summary judgment, asserting it had no legal duty to warn Mr. Quirin of the danger of asbestos materials manufactured and supplied by others. Crane argued there was no evidence Mr. Quirin had any exposure to asbestos-containing products it had placed in the stream of commerce. Applying maritime law, the court held:

> In general, consistent with the bare metal defense, a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material, whether supplied by the original manufacturer or someone else.
> \*\*\*
> Further, even if replacement gaskets and packing for the Crane Co. valves were supplied by a third party, it is reasonable to infer that those replacement parts would have been substantially identical to the components originally supplied by Crane Co. Given these facts, a reasonable jury could find that Crane Co. had a duty to warn about the hazards of asbestos exposure resulting from work on its valves. . .
> \*\*\*
> The court acknowledges that its conclusion differs from that reached by those courts that have relied on the "bare metal defense" to strictly limit liability where a manufacturer did not make the actual product allegedly causing asbestos exposure. It is not convinced, however, that a manufacturer should avoid liability on a failure-to-warn theory, where it designed its products to be used with asbestos-containing materials into the products it sold. On those facts, a jury could conclude that it was not just foreseeable, but inevitable, that the product would subject those working with it to the possible hazards of asbestos exposure. The manufacturer of the product was in a position to warn of dangers apparent at the time the product was sold.

Id. at 8.

As such, contrary to this Court's Order granting summary judgment, it appears that Defendants have put forth no authority from other jurisdictions adopting the "bare metal defense" in a case such as this, where the defendant specifically designed its product to be used with asbestos and **specified** asbestos-containing replacement parts when the original asbestos wore out. Additionally, because Plaintiffs seek to hold Goulds responsible for its own defectively designed products- pumps- the rationale for strict liability under South Carolina products liability law supports Goulds being held liable for injuries caused to Mr. Sparkman. See

11

Restatement of Torts (Second) § 402A cmt. c (1965). Plaintiffs believe that it is significant that the only order to address this issue (where the defendant specified the use of asbestos) in South Carolina was authored by the state court judge who oversees all asbestos cases filed in any circuit court in the State of South Carolina pursuant to the directive of the South Carolina Supreme Court. Judge Hill's order, which appears to be directly on point with the pertinent issues in the present case, is more indicative of how the South Carolina Supreme Court would rule on these issues than decisions from other jurisdictions adopting the bare metal defense based on distinctively different fact patterns.

## CONCLUSION

The evidence in this case, when viewed in the light most favorable to the Plaintiffs, supports the conclusion that Goulds designed its pumps to require asbestos-containing gaskets and packing, supplied asbestos-containing gaskets and packing with its pumps, and specified the continued use of asbestos-containing gaskets and packing with its pumps after the original asbestos wore out. Because Goulds designed its pumps in this manner, Goulds' legal responsibility did not expire when the asbestos it supplied no longer accompanied its pumps. The Goulds pumps remained defective and unreasonably dangerous. As such, there is a genuine issue of material fact with respect to whether or not the Goulds pumps at Westvaco Pulp & Paper Mill were in "essentially the same condition" when Mr. Sparkman "was exposed to asbestos-containing insulation and gaskets used in connection with Goulds pumps on a frequent, regular, and proximate basis such that it was a substantial cause in the development of his mesothelioma"[7] as when Goulds originally sold the pumps. Additionally, whether Goulds could

---

[7] Dkt. No.154, p.8.

reasonably foresee that the asbestos gaskets and packing in its pumps would be replaced with asbestos materials is a question for the jury.

For the reasons stated herein, Plaintiffs respectfully request this Honorable Court GRANT the instant Motion for Reconsideration and DENY Defendant Goulds' Motion for Summary Judgment [Dkt. No.105].

Respectfully submitted this 22nd day of January 2015,

MOTLEY RICE LLC

s/W. Christopher Swett
John E. Herrick
*Federal Court ID No. 5393*
W. Christopher Swett
*Federal Court ID No. 11177*
28 Bridgeside Boulevard
Mount Pleasant, South Carolina  29464
(843) 216-9000
(843) 216-9450 (facsimile)

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TERRENCE J. SPARKMAN and | ) | C/A No. 2:12-cv-02957-DCN |
| LEONARD SPARKMAN, Co-Personal | ) | |
| Representatives of the Estate of ELIJAH | ) | |
| SPARKMAN, JR., Deceased, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| A.W. CHESTERTON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

I hereby certify that on January 22, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

BY:

 s/W. Christopher Swett
John E. Herrick
*Federal Court ID No. 5393*
W. Christopher Swett
*Federal Court ID No. 11177*
28 Bridgeside Boulevard
Mount Pleasant, South Carolina  29464
(843) 216-9000
(843) 216-9450 (facsimile)

ATTORNEYS FOR PLAINTIFFS