**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TERENCE J. SPARKMAN AND LEONARD SPARKMAN, *personal representatives of the estate of* ELIJAH SPARKMAN, JR., *deceased*, ) ) ) ) ) | No. 2:12-cv-02957-DCN |
| Plaintiffs, ) ) | **ORDER** |
| vs. ) ) | |
| GOULDS PUMPS, INC. and RESEARCH-COTTRELL, INC. *n/k/a* AWT AIR COMPANY, INC; ) ) ) ) | |
| Defendants. ) ) | |

This matter is before the court on a motion for reconsideration filed by plaintiffs Terence J. Sparkman and Leonard Sparkman ("plaintiffs"). On December 29, 2014, the court entered an order granting defendant Goulds Pumps, Inc.'s ("Goulds") motion for summary judgment. The court based its ruling on plaintiffs' failure to establish exposure to asbestos-containing products manufactured or otherwise supplied by Goulds, and further determined that Goulds was not subject to a duty to warn consumers about potential dangers from exposure to parts of its product which it did not manufacture or otherwise supply. For the reasons stated below, the court grants plaintiffs' motion for reconsideration.

## I.  BACKGROUND

From 1954 to 2000, decedent Elijah J. Sparkman ("Sparkman") was employed in various capacities at Westvaco Pulp and Paper Mill ("Westvaco") in North Charleston, South Carolina, including as a laborer, boiler operator, evaporator operator, and

1

precipitator operator.  Pls.' Resp. to Def.'s Mot. for Summ. J. 2.  Sparkman was eventually diagnosed with mesothelioma and on September 14, 2012, he filed a personal injury action in the Court of Common Pleas in Charleston County, alleging his mesothelioma resulted from a prolonged exposure to asbestos while employed at Westvaco.  Id.  Defendants then removed the action to this court on October 12, 2012, alleging jurisdiction based on diversity of citizenship.  Sparkman passed away from mesothelioma on October 20, 2012.  Id.  On April 23, 2013, plaintiffs filed an amended complaint as the legal beneficiaries of Sparkman's estate.  The amended complaint alleges claims of breach of implied warranty, breach of post-sale duty to warn, false representation, negligence, recklessness, strict liability in tort, and wrongful death.

On September 8, 2014, Goulds filed a motion for summary judgment, contending that plaintiffs could not establish that Sparkman was exposed to an asbestos-containing product manufactured or otherwise supplied by Goulds.  Def.'s Mot. for Summ. J. 1.  Goulds further argued that South Carolina would not impose on Goulds a duty to warn consumers of the dangers of asbestos-containing component parts used in connection with its pumps.  Id. at 10.  This argument is known as the bare metal defense.  The court determined that plaintiffs could not establish exposure to asbestos-containing products manufactured or otherwise supplied by Goulds, and that the South Carolina Supreme Court would likely adopt the bare metal defense.  Accordingly, the court entered an order granting Goulds's motion for summary judgment on December 29, 2014.

Plaintiffs now move for reconsideration of the December 29, 2014 order, arguing that the order is inconsistent with the holding in Garvin v. Agco Corp., No. 2012-CP-40-6675 (Richland, S.C., Ct. Common Pleas, Dec. 10, 2014), a case brought to the court's

attention during a holiday when the courthouse was closed and after the order had already been prepared. Plaintiffs assert that Garvin indicates that the South Carolina Supreme Court would not adopt the bare metal defense; rather, it would impose a duty to warn consumers about potential dangers from exposure to parts of its product which it did not manufacture or otherwise supply. Pls.' Mot. 6. They further contend that there is sufficient evidence of exposure to asbestos-containing products manufactured or otherwise supplied by Goulds. Id. at 2.

## II. DISCUSSION

Plaintiffs ask the court to reconsider its decision on the basis that allowing summary judgment to stand would be clear error that would result in manifest injustice. Pls.' Reply 2. Both parties analyze the present motion for reconsideration under the standard that the Fourth Circuit has outlined for review of Rule 59(e) motions to alter or amend a judgment. Rule 59(e) states that "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

Courts within the Fourth Circuit have determined that such a motion should be granted only for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal citations omitted) (explaining the standard of review for Rule 59(e) motions); Slep-Tone Entm't Corp. v. Garner, No. 11-cv-00122, 2011 WL 6370364, at *1 (W.D.N.C. Dec. 20, 2011) (describing the standard of review for Rule 54(b) motions); Zurich Am. Ins. Co. v. Fieldstone, No. CCB-06-cv-2055, 2008 WL 941627, at *1 (D. Md. Mar. 24, 2008) (same).

On December 10, 2014, nineteen days before this court granted Goulds's motion for summary judgment, Judge D. Garrison Hill entered an order in the Court of Common Pleas denying in part and granting in part defendant Crane Co.'s ("Crane") motion for post-trial relief.  Garvin v. Agco Corp., No. 2012-CP-40-6675, at *1.  In its motion, Crane made the same argument that Goulds made in its motion for summary judgment, urging adoption of the bare metal defense.  Id. at *10.  In his order, Judge Hill held as follows:

> The term "bare metal" is misleading and, as used here, is semantic advocacy rather than a useful doctrinal description.  There is no evidence Crane sold "bare metal" valves or pumps; in fact, the evidence is to the contrary. . . .  Crane contends that when its original asbestos parts wore out, the pump or valve somehow disappeared from the stream of commerce, even though it remained as an integral, working part of a massive industrial plant.  Crane argues its legal responsibility ceased when the asbestos it supplied no longer accompanied the product. . . .
>
> [However] . . . it was undisputed Crane placed into the stream of commerce products that not only contained asbestos, but specified they be replaced by asbestos parts.  Such a scenario was explicitly mentioned by O'Neil as a problem its ruling did not address.  Viewed objectively, the manufacturer's product—defective when it left Crane's hands because it contained asbestos and specified asbestos for future use—remained defective and unreasonably dangerous when its specifications were heeded not only by its owner/user, but by another manufacturer. . . .
>
> There was no evidence the replacement gaskets and packing manufactured by others were different in material or design from Crane's original supplied products or specifications.  The evidence showed Crane long knew of the risk asbestos posed, and it occupied the best position in the chain of distribution to warn consumers of those risks.  Crane knew asbestos gaskets and packing would not last as long as its bare metal valves or pumps; consequently it knew those parts would have to be replaced, and replaced with similar if not identical parts whose manufacture was guided by Crane's design and specifications.  To say Crane was no longer part of the "chain of distribution" when the original gaskets and packing wore out on its still-functioning product would be artificial, if not silly. . . .

> The Court finds evidence sufficient for the jury to conclude that when Mr. Garvin worked on Crane valves, the valves were in "essentially the same condition as when [they] left the hands of the defendant." Bragg, 319 S.C. at 539.  Crane placed the injury-causing product in the stream of commerce, and there was ample evidence that Mr. Garvin worked on original Crane valves and gaskets.  Crane's liability arises because its own valves caused injury as manufactured, supplied, and designed by Crane with asbestos gaskets and packing.  When the asbestos gaskets and packing were replaced with the same materials that came with the valve, it was not a "substantial change" in the condition of the product.  The product remained the same as when sold—valves containing asbestos gaskets and packing.

Id. at *10–17.

Notably, Judge Hill is the "Administrative Judge for asbestos litigation in the Circuit Courts for the State of South Carolina."  Pls.' Mot. Ex. B at 1.  The South Carolina Supreme Court has granted Judge Hill the "jurisdiction in all circuits in this state to dispose of all pretrial matters and motions, as well as trials, arising out of asbestosis and asbestos litigation filed within the state court system."  Pls.' Reply Ex. A.  Therefore, Judge Hill's interpretation of the bare metal defense in Garvin is persuasive evidence that the South Carolina Supreme Court would likewise reject the bare metal defense.

Plaintiffs correctly note that the court did not consider Garvin in its December 29, 2014 order.  However, plaintiffs did not include this case in their briefings on Goulds's motion for summary judgment.  Instead, they noted the case in a letter filed with the court on December 22, 2014.  The federal courthouse was closed from December 23 to December 29, and the order had been prepared prior to December 22, 2014.  Therefore, the court did not have an adequate opportunity to consider Garvin prior to entering its order.

Now that the court has reviewed Garvin, it agrees with plaintiffs that ignoring the opinion amounts to manifest injustice.  Similar to Crane's specification of the use of

5

asbestos with its products in Garvin, Goulds also specified the use of asbestos for packing and gaskets in its pumps. Pls.' Resp. to Def.'s Mot. for Summ. J. Ex. F at 10. In a 1963 bulletin, Goulds specified the use of blue African asbestos. Id. In addition, prior to approximately 1985, Goulds sold some centrifugal pumps with asbestos-containing casing gaskets and stuffing box packing. Id. Ex. E at 2. Given this factual similarity to the state court case, and the persuasive weight of Judge Hill's opinion, the court finds that that the South Carolina Supreme Court would likely reject the bare metal defense and find that a manufacturer is subject to a duty to warn about potential dangers from exposure to parts of its product which it did not manufacture or otherwise supply. Accordingly, the court grants plaintiffs' motion to reconsider on this ground and denies Goulds's motion for summary judgment.

Plaintiffs also move the court to reconsider on the basis that there is sufficient evidence of exposure to asbestos-containing products manufactured or otherwise supplied by Goulds. Pls.' Mot. 2. However, in so arguing, they merely rehash claims made in their briefings on Goulds's motion for summary judgment. Plaintiffs have not pointed to any new evidence or law that requires the court to re-examine its findings on this issue. Nor have they indicated sufficient danger of manifest injustice. Thus, the court directs plaintiffs to its December 29, 2014 order to dispose of this aspect of their motion to reconsider.

### III.  CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiffs' motion for reconsideration.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 19, 2015**
**Charleston, South Carolina**